## THE WILLKOMMEN.

## THE AUREOLE.

(District Court, E. D. Pennsylvania. August 20, 1900.)

### Nos. 5, 6.

1. COLLISION—OVERTAKING VESSELS.

Evidence considered, and *held* to show that a collision between two steamships, one of which was attempting to pass the other, was due to the fault of the overtaking vessel, which, after passing, relying upon her greater speed, attempted too soon to cross the bows of the other.

2. SAME.

A steamship cannot be held in fault for reducing her speed and changing her course where another vessel, after overtaking and passing her, turns to cross her bows, and collision is certain if she maintains her speed and course, and where her action, although it does not prevent, in fact lessens, the force of the collision.

In Admiralty. Cross libels for collision.

Convers & Kirlin, for the Aureole.
Henry R. Edmunds, for the Willkommen.

McPHERSON, District Judge. On the 13th day of January, 1898, the British steamship Aureole and the German steamship Willkommen collided in the Delaware river, near the town of Newcastle, and both vessels were injured. The cross libels now under consideration are one result of the accident, each vessel charging the other with various negligent acts or omissions. The testimony discloses the contradictions usual in cases of this kind, each set of witnesses apparently holding a brief for their own ship. In my opinion, the facts are as follows:

Both vessels, fully loaded with crude oil in bulk, were at anchor opposite Marcus Hook, in the Delaware river, on the day in question. About noon both weighed anchor, and began the voyage down the stream, the Willkommen being a considerable distance in the lead. The day was clear, the tide at flood, the wind fresh from the west or northwest, and both ships were properly manned and equipped. A pilot was in charge of each vessel, and her captain, with two or three subordinate officers, was also on duty upon the bridge. Competent steersmen were in charge of the wheel, and the steering gear was in good order. The Aureole was the speedier boat, and desired to pass the Willkommen as soon as circumstances would permit. About 2 o'clock the attempt to pass was made at a point where the channel was about 600 feet wide. No signal was given by either vessel, but both knew that the passing was about to be undertaken, and neither asserts that the resulting collision was in any degree due to the failure to give the usual preliminary notice. The Aureole is a steel ship of 2,553 tons net register, 345 feet long, 46 feet in the beam, and was drawing about 25 feet aft, and 23 feet forward. The Willkommen is also of steel, 1,999 tons net register,

325 feet long, 41 feet in the beam, and was drawing about 24 feet aft and 22 feet forward. The Willkommen was on the western side of the channel, a little to the east of the ranges, abundance of room to the eastward being available for the overtaking ship. As the Aureole came up, she changed her course—having been following nearly astern—so as to pass the Willkommen on the east or port side of that ship. Both vessels were going at full speed, and the Aureole maintained this speed until the collision took place; but the Willkommen slowed down to half speed as the bow of the Aureole came abreast of her beam, and soon afterwards stopped her engines, and went back full speed as the imminent danger of a collision became apparent. The collision was not averted, however, and the vessels came together with a good deal of violence, the side of the Willkommen near the port bow striking the starboard side of the Aureole a glancing blow near the stern. Both ships were so much injured that they were obliged to return to Philadelphia for repairs, before they were able to proceed upon their respective voyages.

The question for decision is, to whose fault was the collision due? Upon this point the testimony is in hopeless conflict, and I can do no more than adopt what seems to me the reasonable and probable explanation of the contact. The Aureole's theory is that the two vessels were proceeding upon substantially parallel courses at a distance of 300 feet apart, until the bridge of the Aureole had reached a point opposite the bow of the Willkommen; and that, for some reason not apparent, and not yet explained, the Willkommen then sheered suddenly towards the Aureole, and did the damage complained of. To my mind, this theory is incredible. If the vessels had been 300 feet apart, going upon parallel courses, and if they were still 300 feet apart when the bridge of the Aureole was opposite the bow of the Willkommen, the latter ship could not possibly have crossed the intervening space at an angle,—being the slower boat, and her engines moving at only half speed,—and have delivered the blow in question. The Aureole must inevitably have passed out of danger before her course could have been reached by the Willkommen. The other theory is, I think, much the more probable, namely, that the Aureole was attempting to pass at a distance not greater than 75 or 100 feet, and that, relying upon her greater speed, she undertook to cross the bows of the Willkommen, but changed her course too soon, and thus brought about the injury. This theory explains, and fully justifies, the Willkommen's change of speed and course. To have held her speed and course, when it became apparent that a collision was dangerously near, would have probably sunk the Aureole; and certainly no rule requires speed and course to be maintained when such a result would have been produced.

I have not discussed the testimony in detail. It would be profitless to point out the contradictions between the witnesses, or to criticise their accounts of what took place. An attentive reading of the evidence has satisfied me that the weight of probability is in

favor of the Willkommen's contention, and I have found the facts in accordance with this view.

The libel filed by the Aureole must be dismissed, with costs. In the other case a decree will be entered in favor of the Willkommen.